UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LEANNE FREDRICK,

    Plaintiff,

vs.

BRADD BOSLEY, *et al.*,

    Defendants.

Civil Action No. 1:14-cv-631

Bowman, M.J

### ORDER

This is a diversity action in which Plaintiff's amended complaint asserts claims for negligence against Defendants Bradd Bosley and Stephanie Bosley (the "Bosleys"), Clifton Curry and Wilma Curry (the "Currys"), John Doe Contracting Company, and Delbert Burton. This matter is before the Court pursuant to the parties' cross-motions for summary judgment (Docs. 42, 51, 52) and their responsive memoranda. The parties have consented to disposition of this action by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 10). The motions are fully briefed and will be addressed in turn.

    I.    **Undisputed Facts and Procedural History**

On August 11, 2012, the plaintiff and her boyfriend, Josh Sellers, arrived at the home of the Bosleys. (Doc. 49, Frederick depo. p.19, L 12-17). Josh Sellers and Bradd Bosley were great friends from the same hometown. (Doc. 46, Bradd Bosley depo. p. 8, L 22 to p. 9, L 16). Mr. Bosley invited Mr. Seller to the concerned house because the Bosleys had recently purchased the home, and had an upcoming wedding that Mr. Sellers was a part of. (*Id.* p. 9, L 6-8).

Later that morning, Stephanie Bosley was drinking coffee on the deck and Ms. Frederick joined her. (Doc. 49, Frederick depo. p. 23, L 5-15). Eventually, Mr. Bosley and Mr. Sellers joined them on the deck to socialize. (Doc. 47, Bradd Bosley depo. p. 54, L 3-5; Frederick depo p. 25, L 3-14). While they were talking, the deck collapsed. (Doc. 47, Bradd Bosley depo. p 55, L 14-18; Frederick depo. p. 26, L 4-7). Plaintiff sustained serious injuries to her neck and back as a result of the deck collapse.

Notably, the Bosleys purchased the house from Clifton and Wilma Curry approximately 6 weeks before this incident. The record indicates that before the Currys sold the property to the Bosleys, the Bosleys had the property inspected. The inspection report indicated that the deck contained rotted, degraded, and insect damaged wood that was dangerous. As a result of the inspection report, the Curry's offered to give the Bosleys an allowance to repair the deck. The Bosleys declined and instead insisted that the Curry's repair the deck prior to the closing of the home sale. Pursuant to the contract addendum signed by all the parties, the Currys would have the deck repaired according to an itemized list. Those items at issue here included: replace the bad deck posts and re-secure the deck to prevent it from pulling away from the house; replace the damaged seal plate beneath the sliding glass; and, properly install flashing to the seal plate. (Doc. 46, Bradd Bosley depo. p. 40, L 10 to p. 41, L 9).

To complete the work, the Currys hired Defendant Burton, who was recommended by their landscaper. (Doc. 46, Bradd Bosley depo. p. 45, L 19-20). After Burton completed the work, Mr. Bosley inspected the deck with his realtor. Based upon this inspection, the Bosleys had no knowledge of any defect in the deck. (Doc. 47, Bradd Bosley depo. p. 70, L 19 to p. 71, L 3). The deck repairs were completed in the

first week of June 2012. (Doc. 44, Clifton Curry depo. p. 59, L 23-25). The deck collapsed on August 11, 2012.

Plaintiff filed suit on August 6, 2014. Thereafter, Plaintiff filed an amended complaint on March 3, 2015. (Doc. 17). The amended complaint asserts one claim of negligence against each of the Defendants.[1] In their answer to Plaintiff's amended complaint, the Currys asserted a cross-claim against the Bosleys asserting that if they are liable to the Plaintiff, as described in her complaint, they have the right of action for contribution and/or indemnity against defendants Bradd Bosley, Stephanie Balle-Bosley, Delbert Burton and John Doe Contracting Company. (Doc. 20).

The Bosleys also asserted a cross-claim against the Currys contending, *inter alia*, that they negligently breached their duties by failing to maintain and properly repair the deck and failing to warn of any dangerous conditions associated with the deck. (Doc. 21). The Bosleys' cross-claim also demands judgment against the Currys and Co-Defendants John Doe Contracting Company and Delbert Burton for all sums which they have or will have to pay for the benefit of plaintiff, as well as for attorney fees and for costs incurred herein.

In April 2016, the Currys then moved for summary judgment asserting that they are entitled to judgment as a matter of law on the claims asserted against them by Plaintiff and the Bosleys. (Doc.42). The Currys contend that Plaintiff cannot recover against them as a matter of law because they owed no duty to her. They also maintain that the Bosleys' cross-claim fails as a matter of law because they accepted the repairs made by them and assumed liability as owners of the property.

---

[1] Defendant John Doe Contracting Company has not been identified and Defendant Delbert Burton could not be located for service.

3

Thereafter, the Bosleys also filed a motion for summary judgment, asserting that they are entitled to judgment as a matter of law on Plaintiff's claims against them because they were unaware of any existing defects or dangers relating to the deck. (Doc. 51). Plaintiff also seeks summary judgment against the Bosleys on the issue of liability and on the issue of comparative negligence as asserted by the Currys. (Doc. 52).

II.     **Analysis and Decision**

*A. Standard of Review*

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts

demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251–52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, inferences are not to be drawn out of thin air. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted).

B. *Applicable Law*[2]

A successful negligence action requires a plaintiff to establish that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. *E.g., Texler v. D.O. Summers Cleaners,* 81 Ohio St.3d 677, 680, 693 N.E.2d 271

---

[2] Because this is a diversity action arising out of events occurring in Ohio, the Court applies the substantive law of Ohio in deciding this matter.

5

(1998); *Jeffers v. Olexo,* 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989); *Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 472 N.E.2d 707 (1984). If a defendant points to evidence illustrating that the plaintiff will be unable to prove any one of the foregoing elements, and if the plaintiff fails to respond as Civ.R.56 provides, the defendant is entitled to judgment as a matter of law. *Lang v. Holly Hill Motel,* Inc., 4th Dist. Jackson No. 06CA18, 2007-Ohio-3898, 2007 WL 2199723, ¶ 19, affirmed, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120.

The duty element of negligence is a question of law for the court to determine. *Id.* Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff. Ohio courts have found that the existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied. In addition, we have also stated that the duty element of negligence may be established by common law, by legislative enactment, or by the particular circumstances of a given case.'" *State Farm Fire & Cas. Co. v. Century 21 Arrow Realty,* Cuyahoga App. Nos. 87081, 87108, 2006-Ohio-3967, 2006 WL 2171568, ¶ 29,

Furthermore, "the question as to whether the condition of the premises complained of is an unreasonably dangerous condition is usually a question of fact for determination by the jury or other trier of the facts. *Jones v. H. & T. Enterprises*, 88 Ohio App. 3d 384, 389, 623 N.E.2d 1329, 1333 (1993).

In addressing the cross-claims, the Ohio Supreme Court has affirmed "'there [arises] a duty recognized in every contract that each party will fulfill his obligations with care, skill, and faithfulness.' " *Lone Star Equities, Inc. v. Dimitrouleas*, 2015-Ohio- 2294, ¶ 77, 34 N.E.3d 936, 952 (quoting *Thompson v. Germantown Cemetery*, 188 Ohio App.3d 132, 2010-Ohio-1920, 934 N.E.2d 956, ¶ 10 (2d Dist.), (quoting *Wagenheim v. Alexander Grant & Co.*, 19 Ohio App.3d 7, 14, 482 N.E.2d 955 (10th Dist.1983))).

C. *The Bosleys*

It is undisputed that Plaintiff was a social guest of the Bosleys at the time she was injured by the deck collapse. Notably, a host who invites a social guest to her premises owes the guest a duty to exercise ordinary care not to cause injury to her by any act *of the host* or by any activities carried on *by the host* while the guest is on the premises*,* and to warn the guest of any condition *of the premises* which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition. *Brennan v. Schappacher,* 12th Dist. Butler No. CA2008–09–231, 2009–Ohio–927, ¶ 11.

However, a host is not an insurer of invitees' safety. *Lang v. Holly Hill Motel, Inc.,* 122 Ohio St.3d 120, 909 N.E.2d 120, 2009–Ohio–2495, ¶ 11. Rather, a host owes invitees "a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 788 N.E.2d 1088, 2003–Ohio–2573, ¶ 5. The host's duty to invitees also includes the obligation to inspect the premises to discover

7

possible dangerous conditions. *Perry v. Eastgreen Realty Co.,* 53 Ohio St.2d 51, 52, 372 N.E.2d 335 (1978).

Should a host fail to conduct a reasonable inspection of the premises, the host will be charged with constructive knowledge of any latent defect which the host would have discovered had he or she conducted the reasonable inspection. *Beck v. Camden Place at Tuttle Crossing,* 10th Dist. No. 02AP–1370, 2004–Ohio–2989, ¶ 30. Once imputed with constructive knowledge of the latent defect, the host may face liability for failing to warn the invitee of the latent defect or otherwise make the premises reasonably safe. *Ferguson v. Eastwood Mall, Inc.,* 11th Dist. No. 97 CV 134 (Dec. 4, 1998).

Here, as a social host and property owner, the Bosleys possessed a duty to warn Plaintiff of any dangerous conditions on the property, known to them, but unknown to Plaintiff. *Id.* If the Bosleys failed to reasonably inspect the deck repairs, they could be charged which constructive knowledge of the deck's defects and thus, have breached a duty to Plaintiff. Whether the Bosleys performed a reasonable inspection of the deck repairs is a question of fact that must be resolved by a jury and not the Court on summary judgment. Accordingly, the parties' cross motions for summary judgment are denied in this regard.

D. *The Currys*

The Currys contend that Plaintiff cannot recover against them because they owed no duty to her. As detailed above, when the deck collapsed, the Currys did not own or control the property.

8

Plaintiff, however, argues that the Currys assumed a duty to her when they accepted the responsibility to repair the deck. In this regard, the Ohio Supreme Court has found that '[t]here [arises] a duty recognized in every contract that each party will fulfill his obligations with care, skill, and faithfulness.'" *Lone Star Equities, Inc. v. Dimitrouleas*, 2015-Ohio- 2294, ¶ 77, 34 N.E.3d 936, 952 (quoting *Thompson v. Germantown Cemetery*, 188 Ohio App.3d 132, 2010-Ohio-1920, 934 N.E.2d 956, ¶ 10 (2d Dist.), (quoting *Wagenheim v. Alexander Grant & Co.*, 19 Ohio App.3d 7, 14, 482 N.E.2d 955 (10th Dist.1983)).

Here, the undersigned agrees that, prior to selling the house, the Currys owed a duty to the Bosleys to properly fulfill their obligations under the contract as outlined in the addendum to repair the deck. *See Lone Star*, 34 N.E.3d at 952. As noted by the Currys, it is well established in Ohio that "if a plaintiff brings an action sounding in tort and bases his claim upon a theory of duty owned by a defendant as a result of contractual relations, he or she must be a party or privity to the contract in order to prevail." *Vistein v. Keeney*, 71 Ohio App.3d 92, 106, 593 N.E.2d 52 (1990). Furthermore, "if the plaintiff fails to establish that he or she is a party to a contract or in privity with a party, the plaintiff fails to establish a duty owed the plaintiff by the defendant. *Gentile v. Ritas*, 160 Ohio app. 3d 765, 793, 828 N.E.2d 1021, 1027 (Ohio Ct. App., Frankin County 2005). Here, Plaintiff claims the Currys owed her a duty based upon the contract between the Curry's and the Bosleys. However, Plaintiff was not a party to such contract.

The undersigned also recognizes that the Ohio's Eighth District Court of Appeals ruled that a former property owner could be held liable in negligence for the collapse of

9

a staircase that occurred after he sold the property. *VanAtta v. Akers*, 8th Dist. No. 82361, 2003 Ohio 6615, ¶ 43. In *VanAtta,* however, the former property owner personally constructed the staircase that subsequently collapsed. *VanAtta* at ¶ 12. The Eighth District Court of Appeals ruled that, because the former owner had taken on an extensive building project on his own, he put himself in the position of a contractor. *Id.* at ¶ 41.

Yet, the court was careful to specify that it did not intend for all improvement or repair projects undertaken by homeowners to subject them to liability:

> In holding this, we do not intend all projects undertaken by a homeowner to subject them to liability as contractors. However, when a project is of a type normally regulated by building codes and requiring a permit, the homeowner subjects himself to liability as a contractor.

*VanAtta v. Akers*, 2003-Ohio-6615, ¶ 41.

Here, the Currys did not perform the deck repair; they hired Defendant Delbert Burton.  As such, the Currys cannot be held liable as a contractor.  Furthermore, the Currys did not owe a duty to Plaintiff under a theory of negligence. Accordingly, the Currys are entitled to judgment as a matter of law in this regard.

However, this matter shall proceed on the Bosleys counterclaim against the Currys for indemnification, contribution and or reimbursement (in the event the Bosleys are held liable on Plaintiff claims). (*See* Doc. 21)  As detailed above, the Currys owed a duty to the Bosleys to properly fulfill their obligations under the contract as outlined in the addendum to repair the deck. *See Lone Star*, 34 N.E.3d at 952.  Questions of fact remain surrounding this issue. As such, the Currys' motion for summary judgment is not well-taken on the Bosleys' counterclaim.

### III. Conclusion

In light of the foregoing, it is herein **ORDERED** that:

1. The Currys' motion for summary judgment (Doc. 42) **is GRANTED in PART** as to Plaintiff's claims asserted against them.  The motion is **DENIED** with respect to the claims asserted by the Bosleys against the Currys in their crossclaim as more fully detailed above.  Such claims shall proceed to trial.

2. The Bosleys' motion for summary judgment (Doc. 51) is **DENIED;**

3. Plaintiff's motion for summary judgment (Doc. 52) is **DENIED**[3]**;** and

4. This matter shall proceed to trial by jury as scheduled.

**IT IS SO ORDERED.**

          *s/*Stephanie K. Bowman
          Stephanie K. Bowman
          United States Magistrate Judge

---

[3] Because the Currys did not owe a duty to Plaintiff, any claims of comparative negligence asserted by the Currys are moot.

11