

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Leanne Frederick,                                    Case No. 1:14cv631

             Plaintiff                         Magistrate Judge Stephanie K. Bowman

    v.

                                 **JOINT FINAL PRETRIAL ORDER**

Bradd Bosley et. al.,

             Defendants


This action came before the Court at a final pretrial conference held on August

12, 2016, at 10:00 a.m., pursuant to Rule 16, Federal Rules of Civil Procedure.

I. <u>APPEARANCES</u>:

    **For Plaintiff**: Daniel N. Moore, The Moore Law Firm

    **For Defendants Clifton and Wilma Curry**: Steve Yeager and Susan Salyer,

    Patsfall, Yeager, & Pflum, LLC.

    **For Defendants Bradd and Stephanie Bosley**: John M. Williams, The Law

    Office of John M. Williams, LLC.

II. <u>NATURE OF ACTION AND JURISDICTION</u>:

    A.    This is an action for negligence.

    B.    The jurisdiction of the Court is invoked under Title 28, United States Code, Section 1332.

    C.    The jurisdiction of the Court is not disputed.

III.    <u>TRIAL INFORMATION</u>:

    A.    The estimated length of trial is 5 days.

B.  Trial to a jury has been set for August 29, 2016, pursuant to the General Order on Trial Assignment.

C.  Three sets of each party's exhibits shall be delivered to Chambers at least three (3) days prior to the start of trial for use by the Judge, witness and law clerk. One additional set shall be delivered to opposing counsel.

D.  Three sets of each witness' deposition transcript, if such transcript might be used for impeachment or any other purpose during trial, shall be delivered to Chambers at least three (3) days prior to the start of the trial. Condensed transcripts are acceptable.

IV. AGREED STATEMENTS AND LISTS:

A.  General Nature of the Claims of the Parties

1.  **Plaintiff's Claims**:

The Currys and the Bosleys were negligent, proximately causing Leanne Frederick's injuries.

2.  **Defendant's Claims**:

**Curry Defendants**

The Court has ruled as a matter of law that the Currys owed no duty to the Plaintiff. Therefore, the negligence of the Currys is not an issue. The Bosleys filed a Cross-Claim for contribution and indemnity against the Currys. As set out in the Currys' Motion for Reconsideration, the Currys maintain that the Bosleys have no claim for contribution and/or indemnity against the Currys under Ohio law.

**Bosley Defendants**

The Bosleys claim they are not negligent since, as social hosts who were unaware of any defect with the deck, they did not breach a duty owed to the social guest plaintiff. The plaintiff was not an invitee. Also, if the Bosleys did breach a duty, it is because they relied on the representations of the Currys. The Currys had a contractual obligation to fix the problems identified in the contract addendum with care, skill and faithfulness. Thus, they have viable claims for indemnification, contribution, and reimbursement.

3.  All other parties' claims:

No other parties are involved.

B.   Pending Motions/Motions in Limine:

1.   The following Motions, if any, are pending:

Currently pending before the Court is the Defendant Currys' Motion for Reconsideration of the Court's ruling on the Motion for Summary Judgment with regards to the Bosleys' Cross-Claim against the Currys.

2.   Plaintiff anticipates filing Motions in Limine.

Motion to preclude Defendants from referencing Leanne Frederick's legal use of medicinal marijuana.

3.   Defendant anticipates/does not anticipate filing Motions in Limine.

**Curry Defendants**

Defendant anticipates filing Motions in Limine. Defendants reserve the right to file Motions in Limine once the trial testimony of the Plaintiff's treating physician's deposition, which is currently set for August 15th at 3:30 p.m., is transcribed and Plaintiff's expert Adam Chitwood's deposition, which is currently set for August 26 at 1 p.m., is transcribed.

**Bosley Defendants**

Bosley Defendants cannot anticipate if a Motion In Limine is necessary to issue until the video trial testimony of the plaintiff's experts Dr. Rawson and Adam Chitwood. Bosley Defendants reserves the right to file or move the court for such motion.

Motions in Limine must be filed at least ten (10) business days prior to the commencement of trial.

C.   Uncontroverted Facts

The following facts are established by admissions in the pleadings or by stipulations of counsel:

On August 11, 2012, Plaintiff Leanne Frederick and her boyfriend were guests at the Bosleys' recently purchased home. Leanne, her boyfriend, and the Bosleys were on the deck when it collapsed and fell to the ground. Leanne sustained injury in the fall. In May 2012, Defendants Clifton and Wilma Curry signed a contract to sell their home to Defendants Bradd and Stephanie Bosley née Balle. As part of the pre-closing

activities, the Bosleys hired a professional home inspector to inspect the property. During the home inspection, the inspector identified structural damage to the deck attached to the home, specifically: "deck supports are rotted [, the] deck is pulling away from property [and] seal plate and sub floor at deck door has insect and water damage[;] needs fixed asap." The Currys hired Defendant Delbert Burton to repair the deck. Clifton Curry obtained Mr. Burton's name from a landscaper. No professional inspection was performed on the deck after Burton's work. The Bosleys chose not to ask the professional inspector to return or to hire another inspector. Mr. Bosley and his wife have no expertise in construction. The Currys are not construction experts. The Currys and Bosleys closed on the home in late June 2012. The deck fell shortly after Bradd joined Stephanie, Leanne, and her boyfriend on the deck. The Bosleys did not warn Leanne about the condition of the deck. There was no way for Leanne to know there was rotting wood which would cause the deck to fall.

The parties request and/or anticipate that the following stipulated facts be read by Judge Bowman to the jury:

**Plaintiff's proposed statement of uncontroverted facts**

See above.

**Curry Defendants' proposed statement of uncontroverted facts**

This case involves the collapse of a deck that was attached to a private home. Plaintiff Leanne Frederick was a guest at a home owned by Defendants Bradd Bosley and Stephanie Balle-Bosley. Ms. Frederick was on the deck when it collapsed. Ms. Frederick brings negligence claims against the Bosleys and the previous owners of the home, Defendants Clifton Curry and Wilma Curry as well as the contractor who performed work on the deck, Delbert Burton.

Before the Currys sold the property to the Bosleys, the Bosleys had the property inspected. The inspection report indicated that the deck contained rotted, degraded, and insect damaged wood that was dangerous.  As a result of the inspection report, the Currys offered to give the Bosleys an allowance to repair the deck.  Mr. Bosley declined to accept the allowance and instead insisted that the Currys repair the deck prior to the closing of the home sale.

Mr. Curry's landscaper recommended Defendant Delbert Burton as someone who could repair the deck. Mr. Curry met with Mr. Burton to show Mr. Burton the work that needed to be done to the deck. Mr. Burton told Mr. Curry that he could do the work. Mr. Burton agreed to replace all of the rotten wood and make sure the deck was secured to the house. He

agreed to replace two posts and put them in concrete. He agreed to replace the rotten sill plate and the ledger plate. Mr. Curry had the purchase contract addendum with him when he went over the necessary repairs with Mr. Burton. Mr. Curry told Mr. Burton about the problems with the deck, and Mr. Burton said that he would fix them all.

After Mr. Burton completed his repair work, Mr. Bosley inspected Mr. Burton's work with his realtor. Mr. Bosley saw that the deck was resecured to the home. There was new cement poured around the posts. The deck contained new boards. There was fresh paint. Mr. Bosley stated, "Everything that we asked for from the outside looked to be done." Mr. Bosley did not have the home inspector return to inspect the deck repairs. He did not have any other professional inspect the deck repairs.

Mr. Bosley admits that he retained a right to have the property inspected. He stated, "I could have had anybody come out at any time I wanted." Mr. Bosley admits that if the repair work to the deck did not meet his approval, he did not have to go forward with the purchase contract of the home, but could have "blown the deal up." Satisfied with the work that was performed, the Bosleys went forward with the purchase of the property. The deck collapsed approximately three months after the Bosleys purchased the home from the Currys.

**Defendant Bosley Proposed Uncontroverted Facts**

The plaintiff's boyfriend, Josh Sellers, was good friends with defendant Bradd Bosley. Bradd and Mr. Sellers knew one another from their hometown in Michigan. Bradd Bosley and Stephanie Bosley had set a wedding date in September 2012. Josh Sellers was going to be part of the wedding. On August 10, 2012, the plaintiff and Josh drove from Gaylord, Michigan to the Bosley house for a tuxedo fitting and to see the house recently purchased by the Bosleys.

On August 11, 2012, the plaintiff Leanne Frederick and Josh Sellers arrived at the home of the Bosleys. They were social guests and the Bosleys were social hosts at all relevant times. Bradd had invited Josh to the concerned house because the Bosleys had a new house, an upcoming wedding, and Josh was part of the wedding.

Leanne Frederick didn't know the Bosleys before this trip, but was aware Josh knew the Bosleys. Ms. Frederick understood the purpose of the trip was to have Josh fitted for a suit or tux for the upcoming Bosley wedding; and, Josh and Leanne planned to spend the weekend and stay with the Bosleys.

On that morning of August 11, 2012, Stephanie Bosley was

drinking coffee on the deck and Ms. Frederick joined her. Eventually, Bradd and Josh joined Stephanie and Ms. Frederick on the deck to socialize. While they were talking, the deck collapsed in an extremely fast fashion.

The Bosleys had very recently purchased and moved into the house where the deck was located. Approximately 6 weeks before this incident, they had closed on and moved into the concerned house in late June 2012. The Bosleys entered into a written agreement to buy the concerned house from Clifton and Wilma Curry in May 2012. As part of the purchase agreement, the Bosleys had the house, including the deck, inspected.

The inspection uncovered some visible problems with the deck. After bringing the issues to attention of the Currys, the Currys offered the Bosleys some money to have the deck repaired. However, the Bosleys declined. Therefore, the Currys agreed to have the deck repaired according to an itemized list. Those items at issue here included: replace bad deck posts and re-secure to prevent the deck from pulling away from the house; replace damaged seal plate beneath sliding glass door located at deck; and, properly install flashing to seal plate.

To complete the work, the Currys hired someone named Delbert Burton. After Delbert Burton allegedly performed the work, the Currys represented to the Bosleys that the work was completed. Bradd Bosley relied upon Mr. Curry's representation and inspected the deck to see if it had any red flags. Bradd Bosley saw that the deck was re-secured to the house; he saw new cement was poured around the posts, and boards had been replaced. It looked fresh and complete. Based upon this inspection, the Bosleys were under the belief the Currys had kept their word. A professional inspection was not a requirement of the real estate contract between the Bosleys and Currys nor a legal requirement.

Additionally, Clifton Curry observed the contractor he selected, Delbert Burton, work on the deck, and knew Burton had replaced or repaired sill plates, ledger boards, wood slats, flooring, deck posts, support posts, and boards underneath the sliding glass door. The deck repairs were completed in the first week of June 2012. The Bosleys went forward with the house purchase under the belief the Currys fulfilled their obligations under the purchase contract. The work performed on the deck was done prior to the Bosley's owning the home.

D.  Contested Issues of Fact and Law

1.  Contested Issues of Fact: The contested issues of fact remaining for decision are:

- Whether the Bosleys had knowledge of a condition that would cause the deck to fall.
- Whether the Bosleys as social host owed a duty to the plaintiff as a social guest.
- Whether the Bosleys breached a duty owed to social plaintiff.
- The value of Plaintiff's claim.
- Whether Defendant Bosleys had a duty to conduct an inspection of the deck.
- Whether Defendant Bosleys had a duty to repair the deck.
- Whether Defendant Bosleys had a duty to warn of the dangerous condition of the deck.
- Whether Defendant Currys properly fulfilled their obligations under the contract as outlined in the addendum to repair the deck.
- Whether Defendant Currys properly fulfilled their obligations with care, skill, and faithfulness under the contract as outlined in the addendum to repair the deck.

2.    <u>Contested Issues of Law</u>: The contested issues of law are:

- Whether the Bosleys have any recognizable claim against the Currys for Contribution and/or Indemnity.
- Whether Bosleys as social hosts are liable to the plaintiff as a social guest for unknown conditions on their premises.
- Whether the Currys are liable to the Bosleys due to their failure to repair the deck under the addendum to the contract.

E.    <u>Witnesses</u>

1.    Plaintiff may call to testify at the trial:

Leanne Frederick: Leanne will describe her condition before and after her injury. She will describe the events before, during, and after her injury, and will attest to the expenses and damages she incurred as a result.

Josh Sellers: Josh will testify about the events leading up to and after the deck collapse. He will describe Leanne's condition prior to and after her fall as well as the injuries she sustained.

Billie Johnson: Billie will testify as to how the fall affected Leanne.

Amber Sellers: Amber will testify as to how the fall affected Leanne.

Evan Leatherman: Evan will testify as to how the fall affected Leanne.

Adam Chitwood: Mr. Chitwood will testify via video deposition. He will recount his inspection of the deck in May 2012, the condition of the deck, and the recommendations made in his inspection report.

Bill Jahn: Mr. Jahn will testify as to his inspection of the collapsed deck, and his construction of a new deck on the property of Bradd and Stephanie Bosley.

Blaine Rawson, M.D.: Dr. Rawson will testify as to the injuries Leanne Frederick sustained as a result of the deck collapse, the reasonableness and necessity of her medical treatment and bills, and the need for future treatment.

Bradd Bosley: as if on cross-examination.

Stephanie Bosley: as if on cross-examination.

Clifton Curry: as if on cross-examination.

Wilma Curry: as if on cross-examination.

Any witness identified by any other party

2.     In the absence of reasonable notice to opposing counsel to the contrary, Defendants Bradd and Stephanie Bosley will call, or will have available at the trial:

Bradd Bosley and Stephanie Bosley will testify about the home's purchase negotiations, contract terms and addendums, deck repair responsibility, visual inspection, use and knowledge of the deck while they were the actual owners of it.

Clifton Curry: as if on cross-examination regarding the contract, addendum, and obligations thereunder.

Wilma Curry: as if on cross-examination regarding the contract, addendum, and obligations thereunder.

Any witness identified by any other party.

Adam Chitwood as if on cross examination.

Bill Jahn as if on cross examination.

Leanne Frederick as if on cross examination.

Jürgen Lüders, M.D will testify about the direct injuries and necessity treatment and expenses that resulted.

3.  In the absence of reasonable notice to opposing counsel to the contrary, Defendants Clifton and Wilma Curry will call:

Leanne Frederick as upon cross-examination.

Bradd Bosley as if on cross-examination.

Stephanie Bosley as if on cross-examination.

Clifton Curry on direct examination.

Wilma Curry on direct examination.

Defendant reserves the right to cross-examine any other witnesses offered by any other party to this action.

4.  There is reserved to each of the parties the right to call such rebuttal witnesses as may be necessary, without prior notice thereof to the other party.

Note: *Only witnesses listed in the Pretrial Order or identified in accordance with paragraph 4 above will be permitted to testify at the trial, except witnesses called solely for the purpose of impeachment or for good cause shown.*

F.  Expert Witnesses

Parties are limited to the following expert witnesses whose names have been disclosed to the other side.

**Plaintiff:**

R. Blaine Rawson, M.D.

Adam Chitwood

**Defendants Bradd and Stephanie Bosley**:

Jurgen Luders, M.D.

**Defendants Clifton and Wilma Curry:**

None.

Counsel <u>have attached</u> a resume of each expert's qualifications as

Appendix A herein.

G.   Exhibits

The exhibit list should be prepared prior to the final pretrial conference and set forth in the pretrial order. The parties shall make every effort to use Joint exhibits to the extent possible. Joint exhibits shall be marked as "JX__". Plaintiff's exhibits shall be marked as "PX__" and Defendant's exhibits shall be marked as "DX__". Exhibit markers should be attached to all exhibits at the time they are shown to opposing counsel during the preparation of the pretrial order. A supply of marking tags for exhibits may be obtained from the Clerk's Office. They should be attached to the lower right-hand corner whenever possible.

**Except for good cause shown, the Court will not permit the introduction of any exhibits unless they have been listed in the pretrial order, with the exception of exhibits to be used solely for the purpose of impeachment.**

Exhibit lists shall be in the form set forth in the attached example.

Exhibit lists should be attached as appendices to the pretrial order as follows:

Appendix B Joint Exhibits

Appendix C Plaintiff's Exhibits

Appendix D Defendant's Exhibits

Appendix E Third-Party Exhibits

H.   Depositions

Testimony of the following witnesses will be offered by deposition/ videotape:

R. Blaine Rawson, MD
Adam Chitwood

Please list any anticipated objections to the above witnesses to be offered by deposition/videotape.

Defendants anticipate objecting to portions of Adam Chitwood's deposition testimony to the extent it is attempting to qualify him as an expert witness.

I.     Completion of Discovery

Discovery has been completed.

J.     Miscellaneous Orders

No miscellaneous orders.

V. MODIFICATION

This Final Pretrial Order may be modified at the trial of this action, or prior thereto, to prevent manifest injustice. Such modification may be made by application of counsel or on motion of the Court.

VI. JURY INSTRUCTIONS AND STATEMENT

Jury instructions, including interrogatories, special verdict forms, and an index of the jury instructions shall be submitted by email to bowman_chambers@ohsd.uscourts.gov at least five (5) business days prior to the commencement of trial. In addition, all of the above shall be electronically filed in the Clerk's Office at least five (5) business days prior to the commencement of trial. There is reserved to counsel the right to submit supplemental requests for instructions during trial, or at the conclusion of the evidence, but only on matters that cannot be reasonably anticipated.

The parties shall submit joint instructions in the form set forth in Appendix C of this Standing Order. Each instruction should be on a separate page and be presented jointly with agreed language to be in a normal type, Plaintiff's proposed language to be in italics and Defendant's proposed language to be in bold. All instructions must contain a citation of authority (including the page number for the specific legal proposition for which you are citing the case) upon which counsel relies. A request for special instructions must be filed with the Clerk of Courts Office, prior to presentation to the Court.

The parties shall jointly prepare a statement of the case to be read by Judge Bowman to the jury at voir dire. This statement shall be emailed to chambers at bowman_chambers@ohsd.uscourts.gov three (3) days prior to the

commencement of trial.

VII. SETTLEMENT EFFORTS

A demand letter was distributed by Plaintiff on April 10, 2015. A settlement conference was held on March 11, 2016. No mutually agreeable resolution was reached.

It was the Defendants' understanding that the settlement conference was essentially continued in progress until the Court was able to rule on the pending Motions for Summary Judgment.

VIII. TRIAL TO THE COURT

**Proposed Findings of Fact & Conclusions of Law**: Within 14 days of the conclusion of trial to the Court, counsel shall file their Proposed Findings of Fact and Conclusions of Law.

IX. JURY TRIAL

X. INSTRUCTIONS

This proposed Final Pretrial Order shall be emailed, in Word format, to Chambers at bowman_chambers@ohsd.uscourts.gov at least five (5) business days prior to the Final Pretrial Conference. It should not be filed with the Clerk's office.

**IT IS SO ORDERED.**

Stephanie K. Bowman
United States Magistrate Judge

_____ /s/ Daniel N. Moore_____
Counsel for Plaintiff Leanne Frederick

_ /s/ John M. Williams_____
Counsel for Defendants Bradd and Stephanie Bosley

_____
Counsel for Defendants Clifton and Wilma Curry

## Appendix A

**CV's of Expert Witnesses**

Jürgen Lüders, M.D.
1935 San Lu Rae Dr.
East Grand Rapids, MI 49506
Phone: (616) 915-8283
E Mail: ludersj@mercyhealth.com

**EMPLOYMENT**:

**Saint Mary's Mercy Health**
Neurosurgeon with specialty in complex spine, epilepsy surgery and brain tumors.

**PROFESSIONAL AFFILIATIONS:**

**St. Mary's Mercy Health**
Chief of Neurosurgery

**Mercy Health Physician Partners**
Board Member/Chairman of Board

**Mercy Health Physician Partners**
Finance Committee Chairman

**Michigan State University College of Medicine**
Clinical Assistant Professor in Department of Surgery

**Saint Mary's Foundation**
Board of Trustee's Member

**EDUCATION**:

**Board Certified Neurosurgery**
January 2012

**Cleveland Clinic Foundation, Neurosurgical Resident**
Cleveland, Ohio
1998-2003
Chief Resident 2003-2004

**The University of Chicago, Pritzker School of Medicine**
Chicago, Illinois
M.D., June 1998

**Royal School of Surgeons, in Ireland**
Dublin, Ireland
Sept. 1992-June 1995

**Washington University**
St Louis, Missouri
B.A., Biology, May 1992

**HONORS/AWARDS:**

**Cleveland Clinic Foundation intramural grant for** "Cellular Mechanisms of Blood Induced Epileptogenicity in an

Animal Model of Seizures and in Patients with Cavernous Angiomas," $18,275, 2002.

**Cleveland Clinic Neuroscience Research Day**, Third Prize, Junior level, $250, 1999.

**Calvin Fentress Research Fellowship Award**, $1,000, 1997/1998.

**Student Scholarship in Cerebrovascular Disease, Stroke Council of the American Heart Association,** $2,000, Preceptor R. Loch MacDonald, 1997.

**Intramural Summer Research Fellowship Award**, National Institutes of Health, 1994 and 1995.

**Exceptional Summer Student Award**, National Institutes of Health, 1995.

**COMMENTS:** Lüders HO. **Lüders J**. Comment: Hoh BL. Chapman PH. Loeffler JS. Carter BS. Ogilvy CS. Results after multimodality Treatment in 141 brain AVM patients with seizures: Factor associated with seizures incidence and seizure outcome: *Neurosurgery*, August, 2002.

Lüders HO. **Lüders J**. Comment: Byrne JV. Boardman P. Ioannidis I. Adcock J. Traill Z. Seizures after aneurismal subarachnoid hemorrhage treated by coil embolization: *Neurosurgery*, March, 2003.

**PATENTS:** Electrical overdriving of the epileptogenic zone for the treatment of epilepsy and application thereof. Patent Application Number 20050049649.

Fornix stimulator for electrical overdriving of the hippocampus, Endoscopically guided placement of fornix stimulator, and application thereof. Patent Application Number 20050049649.

Application of stimulus to white matter to induce a desired physiological response. Patent application number 20050010261.

**EXAMS:** Step I Medical Boards, Passed
Step II Medical Boards, Passed
Step III Medical Boards, Passed
American Board of Neurosurgical Surgeons Written Exam, Passed
American Board of Neurosurgical Surgeons Oral Exam, Passed

**EXTRA-CURRICULAR
ACTIVITIES:** University of Chicago, Pritzker School of Medicine Admissions Interviewing, Oct.-Dec. 1997

Epilepsy Delegation-Citizen Ambassador Program to Beijing, China And Ulaanbaatar, Mongolia

Assistant to the Delegation Leader, Sept. 9-21, 1996
-Assisted a delegation of physicians from around the world
gathering in Beijing and Ulaanbaatar visiting neurological
and neurosurgical institutes to explore new approaches in the
treatment of epilepsy.

**INTERESTS:**     Golf, skiing and tennis

**COURSES:**     Cleveland Spine Review-Hands on course-Director: Ed Benzel
Resident instructor, May 2001, May 2002.

Techniques of Epilepsy Surgery- Director: William Bingman
August 2002.

**PUBLICATIONS:**

**Chapters:**     **Lüders J**. Luders HO.
Contributions of F. Krause and O. Foerster to Epilepsy Surgery,
Epilepsy Surgery. Second Edition, Editors Luders HO and Comair Y,
Lippencott-Raven Press, 1998

Hadar E. **Lüders J**. Luders HO.
General and Historical Considerations of Epilepsy Surgery.
Youmans Neurological Surgery, Fifth Edition, Editor Winn HR, W.B.
Saunders, 2004.

Steinmetz M. **Lüders J**. Benzel E.
Magnetoencphalography, Neurosurgery, Third Edition. Editors
Rengachary SS, Maciunas RJ, and Wilkins RH, McGraw-Hill, 2006.

**Lüders J**. Najim I. Luders HO.
Brain Stimulation and Epilepsy: Basic Overview and Novel
Approaches, Deep Brain Stimulation and Epilepsy, Editor Luders HO
London: Martin Duntiz, LTD, 2004.

Lüders H. **Lüders J** to. Contributions of Fedor Krause and Otfrid Foerster
Epilepsy Surgery, In: Lüders H. Comair Y. Editors Epilepsy Surgery,
Second edition. Lippincott Williams and Wilkins, 2001: 23-33.

**Articles:**     **Lüders J**. Weihl CC. Lin G Ghadge G. Stoodley M Roos RP.
Macdonald RL. Adenoviral gene transfer of nitric oxide synthase
increases cerebral blood flow in rats. *Neurosurgery*. 47(5):1206-14;
discussion 1214-1215, 2000 Nov.

Weihl C. Macdonald RL. Stoodley M. **Lüders J**. Lin G. Gene therapy
for cerebrovascular disease. *Neurosurgery*, 44(2):239-52; discussion
253, 1999 Feb.

Luders HO. **Lüders J**. Letter to the Editor: Source-Notes in the
History of Art 16(1): 32-34, 1996.

Kellinghaus, C. Loddenkemper, T. Möddel, G Tergau, F.

**Lüders, J.** Lüdenmann, P. Nair, D. Lüders, HO. Elektrische Hirstimulation in der Epilepsietherapie (Electrical brain Stimulation in the treatment of epilepsy), *Der Nervenantz,* 2003.

Chapman K. Wyllie E. Najim I. Ruggieri P. Bingaman W. **Lüders J.** Kotagal P. lachwani D. Dinner D. Lüders H. Seizure Outcome After Epilepsy Surgery in Patients with Normal Pre-operative MRI, Journal of Neurology Neurosurgery and Psychiatry with Practical Neurology, 2004.

**Lüders J.** Steinmetz M. Mayberg M. Awake craniotomy for microsurgical Obliteration of mycotic aneurysms: technical report of three cases, Neurosurgery, 2005.

## Appendix B

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**Leanne Frederick,**

        **Plaintiff**

Case No. **1:14cv631**

     **V**

**Magistrate Judge Bowman**

**Bradd Bosley et. al.,**

        **Defendants**

**JOINT EXHIBIT LIST**

| Ex. # | Date offered & by whom | Admitted | Bates # | Date | Description |
|---|---|---|---|---|---|
| JX 1 | | | | | Contract to Purchase dated 5/1/12 and Addendums |
| | | | | | Addendum A to Purchase Contract, 5/13/12 |
| | | | | | Addendum B to Purchase Contract |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

<u>Appendix C</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**Leanne Frederick,**                              Case No. <u>1:14cv631</u>

              **Plaintiff**

     **V**                              **Magistrate Judge Bowman**

**Bradd Bosley et. al.,**

             **Defendants**          **PLAINTIFF'S EXHIBIT LIST**

| Ex. # | Date offered & by whom | Admitted | Bates # | Date | Description |
|-------|------------------------|----------|---------|------|-------------|
| PX 1 | | | | | Ostego Memorial Hospital Med Care, Medical Records, 8/15/12 |
| PX 2 | | | | | Ostego Memorial Hospital Medical Records, 11/1/12 - |
| PX 3 | | | | | Dr. Donald P. Cousineau, Medical Records, 9/18/12-1/9/14 |
| PX 4 | | | | | Cousineau Chiropractic Center, Medical Records, 10/22/12-7/29/13 |
| PX 5 | | | | | Harborside Spine and Sports Center, Medical Records, 12/12/12 |
| PX 6 | | | | | Physical Medicine and Rehabilitation, Medical Records, 3/13/13 |
| PX 7 | | | | | Harbor Arthritis and Lifestyle Center PC, Medical Records,7/30/13 |

| | | | | | |
|---|---|---|---|---|---|
| PX 8 | | | | | Neurosurgical Spine Specialists, Medical Records, 4/22/13-3/18/16 |
| PX 9 | | | | | Dynamic Physical Therapy, Medical Records, 12/18/12-7/14/16 |
| PX 10 | | | | | Special Damages Summary |
| PX 11 | | | | | Ostego Memorial Hospital Med Care, Billing Statement, 8/15/12, $117.00 |
| PX 12 | | | | | Ostego Memorial Hospital Billing Statement, 11/1/12 - 3/18/16 |
| PX 13 | | | | | Dr. Donald P. Cousineau, Billing Statement, 9/18/12-1/9/14, $5,546.00 |
| PX 14 | | | | | Cousineau Chiropractic Center, Billing Statement, 10/22/12-7/29/13, $985.78 |
| PX 15 | | | | | Harborside Spine and Sports Center, Billing Statement, 12/12/12, $150.00 |
| PX 16 | | | | | Physical Medicine and Rehabilitation, Billing Statement, 3/13/13, $555.00 |
| PX 17 | | | | | Harbor Arthritis and Lifestyle Center PC, Billing Statement,7/30/13, $260.00 |
| PX 18 | | | | | Neurosurgical Spine Specialists, Billing Statement, 4/22/13-3/18/16 |
| PX 19 | | | | | Dynamic Physical Therapy, Billing Statement, 12/18/12-7/14/16 |
| PX 20 | | | | | Empi, Billing Statement, 1/14/13-2/22/13, $1,185.81 |

| | | | | | |
|---|---|---|---|---|---|
| **PX 21** | | | | | Wal-Mart Pharmacy, Billing Statement, 8/15/12-11/6/14, $647.76 |
| **PX 22** | | | | | Medical Illustration |
| **PX 23** | | | | | |
| **PX 24** | | | | | |
| **PX 25** | | | | | |
| **PX 26** | | | | | Inspection Report May 13, 2010, GBC Property Inspections |
| **PX 27** | | | | | National Catastrophe Team, Photos of Balle property taken 9/26/12 |
| **PX 28** | | | | | Photos of Leanne |
| **PX 29** | | | | | |
| | | | | | |
| | | | | | |

Appendix D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Leanne Frederick,                                    Case No. 1:14cv631

                 Plaintiff

    V                                      Magistrate Judge Bowman

Bradd Bosley et. al.,

               Defendants      DEFENDANTS' EXHIBIT LIST

| Ex. # | Date offered & by whom | Admitted | Bates # | Date | Description |
|---|---|---|---|---|---|
| DX 1 | | | | | Contract |
| 2 | | | | | Addendum A |
| 3 | | | | | Addendum B |
| 4 | | | | | Medical Bills Chart with Write-offs under Robinson v. Bates |
| 5 | | | | | CV of Expert |
| 6 | | | | | Selected medical records |
| 7 | | | | | IME report & supplement, if necessary |
| | | | | | |
| | | | | | |
| | | | | | |